UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CEDRICK S. BARRINER,

        Petitioner,

v.                                              Case No. 6:11-cv-1080-36GJK

SECRETARY, DEPARTMENT OF
CORRECTIONS, et. al,

        Respondents.

_____/

## ORDER

      Cedrick S. Barriner ("Petitioner") initiated this action for habeas corpus relief pursuant to 28 U.S.C. § 2254 (Doc. 1, filed June 29, 2011).  Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought should not be granted.  Thereafter, Respondents filed a timely response to the petition in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. 8,  filed October 20, 2011). Petitioner filed a reply to the response (Doc. 11, filed November 17, 2011).

      Petitioner raises four claims in his petition.  He alleges that counsel was ineffective for:  (1) agreeing with the trial court that no Florida Statute encompasses both assault and trespass; (2) failing to timely file a facially sufficient motion to interview a juror; (3) failing to request an "independent act" jury instruction; and (4) advising Petitioner to plead guilty to the second count of his indictment.

      Upon due consideration of the petition, the response, the reply, and the state court record, this Court concludes, for the reasons set forth below, that the petition should be granted as to Claim One and denied as to Claims Two, Three, and Four.

## I.    Procedural History

      On April 9, 2010, Petitioner was charged by second amended information with armed burglary

of an occupied dwelling with an assault in violation of Florida Statute §§ 810.07, 810.02(1)(b), and 810.02(2)(a) (count one) and with possession of ammunition by a convicted felon in violation of Florida Statute §§ 790.23(1) and 729.23(3) (count two) (App. A at 77).[1]  After a jury trial on count one, Petitioner was found guilty of the lesser included offense of burglary of an unoccupied dwelling. *Id.* at 116.  On June 9, 2010, Petitioner entered an open plea to the court on count two (App. A at 242-244; App. C at 4).  The trial court found Petitioner to be a habitual felony offender (App. A at 248).  He was sentenced to twenty years in prison on count one and a concurrent twenty years in prison on count two (App. A at 262-264; App. C at 290-291).  Florida's Fifth District Court of Appeal *per curiam* affirmed on December 7, 2010 (App. F); *Barriner v. State*, 50 So. 3d 615 (Fla. 5th DCA 2010).

Petitioner filed a Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief ("Rule 3.850 motion") on December 19, 2010 (App. J).  The motion raised the same four claims as the instant petition. The trial court denied the motion in a written order, and Florida's Fifth District Court of Appeal *per curiam* affirmed (App. N, O); *Barriner v. State*, 64 So. 3d 690 (Fla. 5th DCA 2011).

## II.      Governing Legal Principles

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal

---

[1] Unless otherwise noted, citations to the record refer to the appendices filed by Respondents on October 24, 2011 (Doc. 9).

habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

### a.     Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

The United States Supreme Court has clarified the meaning of "contrary to" and "unreasonable application" as used in 28 U.S.C. § 2254(d)(1):

> [Section] 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meanings. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002).

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented

in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### b.    Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test to determine whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id.* at 687-88.

A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. Thus, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989). As observed by the Eleventh Circuit Court of Appeals:

> The test [for ineffective assistance of counsel] has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

As to the prejudice prong of the *Strickland* test, the Supreme Court has cautioned that "'[i]t is

not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Strickland*, 466 U.S. at 693.  However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome. *Strickland*, 466 U.S. at 693-94.  Instead, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  The prejudice assessment does "not depend on the idiosyncracies of the particular decision maker," as the court should presume that the judge or jury acted according to law. *Strickland*, 466 U.S. at 694-95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id*. at 695.

III.   **Analysis**

a.   ***Claim One***

Petitioner alleges that trial counsel was ineffective for failing to adequately investigate case law pertaining to a jury question (Doc. 1 at 6).  Specifically, Petitioner argues that counsel should have objected when the trial court told the jury, in response to a direct question, that no Florida statute encompasses both an assault and a trespass. *Id*.  Although Petitioner does not argue that such a statute exists, he contends that "he was entitled to have the jury instructed that it was allowed to [choose] more than one lesser included offense listed on the verdict form, consistent with his theory of defense that he had committed the crime[s] of assault and trespass, but not burglary." (Doc. 1-1 at 2).  Petitioner asserts that the trial court's negative answer to the jury's question denied it the right to consider the two lesser included offenses of assault and trespass and "denied the jury their right to exercise its pardon power." *Id*.

Petitioner raised this issue in his Rule 3.850 motion for post-conviction relief, and the post-conviction court denied the claim.  The court conceded that counsel may have been ineffective for failing to reference Florida case law that would have allowed the jury to convict Petitioner for both trespass and assault, but determined that Petitioner could not show prejudice as a result thereof:

> In ground one of his motion, Defendant asserts that his trial counsel was ineffective for failing to research the jury question before answering and for failing to object to the Court's and prosecution's contentions that the answer was "no."  During deliberations, the jury asked the following written question: "Dear Judge, is their [sic] a Florida Statute that encompasses both an Assault and [Trespass]?"  After receiving the question, the question was answered in the negative, an answer agreed to by defense counsel.  The Defendant also argues that he was entitled to have the jury instructed as to the lesser included offenses of assault and trespass.  Since the jury was not instructed as such, the Defendant contends that the jury was denied the right to exercise its pardon power.

> In this case, Defendant may have made a preliminary showing as to the first prong of the *Strickland* test.  Counsel agreed, without citing any contrary case law, that there was no statute that encompassed both trespass and assault.  This was an accurate answer to the jury's specific question, but while no such statute exists, counsel could have referenced *Stuckey v. State*, 972 So. 2d 918 (Fla. 5th DCA 2008), and requested a jury instruction that the Defendant could instead be found guilty of both trespass and assault.

> Despite this, the Defendant cannot show that he was prejudiced by this failure.  The jury convicted him of burglary of a dwelling.  Thus, it would be mere speculation as to whether the inclusion of the lesser included offenses would have resulted in a different verdict.  In *Strickland*, the Supreme Court concluded that it was not enough to simply find that "errors had some conceivable effect [on] the outcome of the proceeding." *Strickland*, 466 U.S. at 693.  A Defendant must, instead, show that the errors had an adverse effect on the defense. *Id.*

> Defendant's contention that precluding the availability of conviction on lesser included offenses deprived the jury of its pardon power is not a proper basis for overturning his conviction.  In *Sanders v. State*, 946 So. 2d 953 (Fla. 2006), the Florida Supreme Court said, in regard to meeting the prejudice prong, that "any finding of prejudice resulting from defense counsel's failure to request an instruction on lesser-included offenses necessarily would be based on a faulty premise:  that a reasonable probability exists that, if given the choice, a jury would violate its oath, disregard the law, and ignore the trial court's instructions." *Id.* at 959.  The Defendant cannot rely on the "luck of a lawless decision maker. . ." to make a showing of prejudice. *Strickland*, 466 U.S. at 695.  Thus, as to ground one, relief should be denied.

(App. N at 1-2).  After reviewing the record, the Court concludes that counsel's failure to alert the trial court to case law that would have allowed the jury to convict Petitioner of both assault and trespass was not a strategic choice, but the result of his failure to understand the applicable law.  Furthermore, Petitioner was prejudiced by counsel's failures.

<em>i.       Counsel's failure to investigate relevant law was unreasonable</em>

The trial court conceded that, "[d]uring its charge to the jurors, "[Petitioner] may have made a preliminary showing as to the first prong of the *Strickland* test." (App. N at 2). A review of the record supports a conclusion that counsel's performance was deficient.

During its charge to the jury, the trial court instructed that Petitioner could be found guilty as charged in the information, guilty of one lesser included crime, or not guilty (App. B at 248).  The trial court made clear to the jury that only <u>one</u> verdict could be returned:

> Only one verdict may be returned as to the crime charged.  The verdict must be unanimous, that is, all of you must agree to the same verdict.  The verdict must be in writing, and for your convenience, the necessary form of verdict has been prepared for you.  It reads as follows, and you're to place an X on the one line that represents the jury's verdict.

(App. B at 249).[2]   Counsel did not object to this instruction. After deliberations began, the jury sent a note to the court, and the court alerted trial counsel:

| THE COURT: | Back on the record in the case of Florida versus Cedric Barrier. I received a note from the jury which reads, Dear Judge, Is there a Florida Statute that encompasses both an assault and trespass? |
| --- | --- |
| [STATE]: | I think the answer is no. |
| [COUNSEL]: | They [sic] have to agree, Your Honor. |

---

[2]The verdict form provided to the jury listed each possible offense and the Florida Statute corresponding to that offense (App. A at 116).

THE COURT:        You just want me to answer it that way, no?  All right, Let's bring in the venire.

(App. B at 255-256).  When the jurors were brought back into the courtroom, the court, without elaboration, told them that "[t]he answer to your question is no." *Id.* at 256.  Nine minutes after the trial court answered the question, the jury returned a verdict convicting Petitioner of burglary of an unoccupied dwelling without assault (App. A at 88).

There is no specific Florida statute that encompasses both trespass and assault.  However, in the context of this case, particularly the trial court's instruction to the jury that it could find Petitioner guilty of only one crime, and the verdict form which listed the Florida statute corresponding to each offense, it appears that the jury's intended query was whether it was possible to find Petitioner guilty of both trespass and assault.[3]  Consequently, the trial court's answer to the question was wrong.

Under Florida law, when a defendant is charged with an offense and tried for it, the jury may convict him of "any offense that as a matter of law is a necessarily included offense or is a lesser included offense" and "is supported by the evidence." Fla. R. Crim. P. Rule 3.510.  In *Bell v. State*, the Florida Supreme Court determined that a jury should be instructed that "it can convict of either the greater offense or one *or more* of the lesser included offenses, but not both." 437 So. 2d 1057, 1061 (Fla. 1983) (emphasis added).

---

[3]This assumption is strengthened by a letter sent to the trial judge by a juror after the verdict. The juror wrote that the jury had been deadlocked as to whether Petitioner had an intent to steal at the time he entered the home, but that all the jurors thought Petitioner guilty of assault. Accordingly, the jurors had submitted the question to the court asking whether any Florida statute encompassed both assault and trespass "in order to prevent a deadlock."  The letter further indicated that the resulting conviction for burglary (of an unoccupied dwelling without assault) was a compromise verdict (App. A at 119).

In the factually analogous case of *Gian-Grasso v. State*,[4] Florida's Fourth District Court of Appeal determined that a defendant is entitled to have a jury consider convicting him of two separate component offenses of a compound offense.  Referring specifically to burglary, the court determined:

> Where a defendant is charged with burglary, a jury could find that the defendant had no criminal intent upon entering but subsequently formed the intent to commit an offense, such as, in this case, battery.  In this situation,  the defendant has committed a trespass and a battery, but not a burglary.  A defendant is entitled to have the jury determine when the intent was formed and consider the alternative of convicting of both component offenses, rather than burglary or just one of the component offenses.

899 So. 2d 392 (Fla. 4th DCA 2005); *see also Stuckey v. State*, 972 So. 2d 918 (Fla. 5th DCA 2007) ("[W]hen a defendant is tried for a compound offense, he is entitled to have the jury consider convicting him of both the separate component offenses that make up the compound offense.") (internal quotations omitted); *Gregory v. State*, 937 So. 2d 180, 183 (Fla. 4th DCA 2006) (jury should be permitted to consider the alternative of convicting defendant of both component offenses, rather than burglary or just one of the component offenses); *Bledsoe v. State*, 764 So. 2d 927, 929 (Fla. 2d DCA 2000) (In a prosecution for burglary with battery, defendant may be convicted of both the lesser offense of trespass and the lesser offense of battery if information supports a finding of both offenses and the jury determined both occurred); *Spencer v. State*, 71 So. 3d 901 (Fla. 1st DCA 2011) (even if evidence supported a conviction of the greater offense, it was error for court to veto jury's decision to convict defendant of two misdemeanor charges).  Likewise, in the instant case, Petitioner was entitled to have the jury consider whether and when  the required intent for burglary was formed, and if applicable,

---

[4]In *Gian-Grasso*, the jury sent a note to the trial court asking whether it could convict of both trespass and battery, which were listed individually as lesser-included offenses on the verdict form, or if they had to choose only one.  The court instructed the jury that they could check only one box on the verdict form and counsel agreed with the court's answer. 899 So. 2d at 392. The Fourth District Court of Appeal determined that counsel may have been ineffective for failing to preserve the issue for appellate review and remanded to the trial court to determine whether counsel made a strategic decision to waive possible conviction on both issues. *Id.*

convict Petitioner of the component offenses of trespass and assault.

*Strickland* requires that counsel either make a reasonable investigation of the law and facts relevant to a case or make a reasonable decision not to carry out a particular investigation. 466 U.S. at 690-91. Counsel neither questioned the meaning of the jury's inquiry nor researched Florida law to ascertain whether the jury could find Petitioner guilty of both trespass and assault.  Nor did counsel object to the trial court's erroneous instruction that the jury could find Petitioner guilty of only a single lesser included offense.  Accordingly, counsel's decision not to object to the court's answer could not be considered strategic.  Because the court's answer to the jury question was erroneous, counsel's failure to object to the answer was objectively unreasonable.

> ii.    *Petitioner suffered prejudice from the trial court's erroneous instruction*

The more contentious point involves the second prong of *Strickland*, which examines whether Petitioner was prejudiced by counsel's mistake.  This Court concludes that the state court's prejudice analysis was flawed in two aspects.  First, the state court determined that in order to demonstrate prejudice, Petitioner needed to "show that the errors had an adverse effect on the defense." (App. N at 2).  This overstates the burden on a habeas petitioner.  *Strickland* does not require certainty or even a preponderance of the evidence that the outcome would have differed absent counsel's errors.  Rather, a petitioner must demonstrate only a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.

Next, in its order denying post-conviction relief, the court stated that "[Petitioner] argues  that he was entitled to have the jury instructed as to the lesser included offenses of assault and trespass. Since the jury was not instructed as such, the Defendant contends that the jury was denied the right to

10

exercise its pardon power." (App. N at 2).  The post-conviction court then concluded that Petitioner

could not show prejudice because the jury convicted Petitioner of burglary of a dwelling and "it would

be mere speculation as to whether the inclusion of the lesser included offenses would have resulted in

a different verdict." *Id.*  Indeed, the Eleventh Circuit has addressed ineffective assistance of counsel

claims in which a petitioner argued that counsel was ineffective for completely failing to request a

lesser included instruction and held that:

> [A]ssertions that [Petitioner] would have been convicted of the lesser included offense,
> as opposed to the greater offense, are pure speculation-speculation both that the state
> trial court would have decided to instruct the jury on the lesser included offense and that
> the jury, if instructed on the lesser included offense, would have convicted on it instead
> of the higher offense.

*Harris v. Crosby*, 151 Fed. Appx. 736, 738 (11th Cir. 2005).[5]   The Eleventh Circuit has further

determined that, if the record evidence was sufficient to convict a defendant on the greater offense, then

that defendant  could not show resulting prejudice from counsel's failure to request instructions on a

lesser included offense.  *Magnotti v. Secretary, Dept. of Corr.*, 222 Fed. Appx. 934, 940 (11th Cir.

2011).  The Supreme Court of Florida has specifically determined that "a claim alleging ineffective

assistance of counsel for failure to request an instruction on a lesser included offense may be summarily

denied." *Sanders v. State*, 946 So. 2d 953, 960 (Fla. 2006).

    However, this case law is distinguishable from the instant case in an important aspect:  in those

cases, there was no instruction given on the lesser included offense.  Contrary to the state court's

assertion otherwise, Petitioner's jury *was* instructed on the lesser included offenses of assault and

trespass and both were included as offenses on the verdict form (App. B at 243).  Petitioner did not

_____

    [5]This is an unpublished decision and is persuasive, but not binding, authority
pursuant to Eleventh Circuit Rule 36–2. The Court notes this same rule applies to other Fed.
Appx. cases cited herein.

argue otherwise in his Rule 3.850 motion (App. M). However, while the jury was correctly instructed on the lesser included offenses, it was *incorrectly* instructed that it could not find Petitioner guilty of both trespass and assault, even after the jury effectively asked whether it could do so. In other words, the jury was given a misleading instruction that foreclosed its ability to choose two lesser included offenses. The state court's conclusion that Petitioner's Rule 3.850 motion was predicated upon his contention that the jury was not instructed on the lesser included offenses of assault and trespass was based upon an unreasonable determination of the facts. Further, the case law used to support the court's determination that Petitioner could not show prejudice from the alleged omissions is inapplicable to the facts of the instant case.

Because the state court's higher prejudice standard was contrary to and an unreasonable application of the *Strickland* decision and because the state court's decision was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, this Court must independently determine whether counsel's deficient performance resulted in prejudice. *See* 28 U.S.C. § 2254(d); *Sochor v. Sec'y, Dep't. of Corr.*, 685 F.3d 1016, 1030 (11th Cir. 2012)( "[I]f a state habeas court denies relief where we would have done so if we were conducting de novo review, federal relief is due to be denied regardless of the reasoning the state court used to reach that result.") (*quoting Jefferson v. Fountain*, 382 F.3d 1286, 1295 n. 5 (11th Cir. 2004)).

In addition to the jury's note questioning its ability to convict of both trespass and assault and the subsequent letter to the court regarding the jury's difficulty in reaching a verdict, evidence of the jury's struggle can be found in the verdict eventually reached. Petitioner was charged with armed burglary of an occupied dwelling with an assault (App. A at 77). It was undisputed at trial that the

12

subject dwelling was occupied when Petitioner entered.[6]   However, only nine minutes after the trial court answered the jury's question regarding its ability to convict of both trespass and assault, the jury returned a verdict on the lesser included offense of burglary of an *unoccupied* dwelling without assault under Florida Statute 810.02(3)(b) (App. A at 88).[7]   No record evidence supports the jury's conclusion that the dwelling was unoccupied when Petitioner entered nor did Petitioner argue that the dwelling was unoccupied.   In *Strickland*, the Supreme Court recognized that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."   466 U.S. at 696.

In light of the jury's specific query regarding its ability to convict Petitioner on two lesser included statutes, and in light of a prior instruction from the trial court that the jury could convict Petitioner of only one lesser included offense, it is reasonably probable that, had the jury been given the opportunity to convict Petitioner of <u>both</u> trespass and assault instead of burglary of an unoccupied dwelling, they would have done so.   The state court's conclusion that Petitioner could not show prejudice from counsel's performance was both contrary to *Strickland* and based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.   Accordingly,

---

[6]Petitioner testified that Antonio Jones opened the door when he arrived and that "[t]here was another guy sitting on the couch when we were smoking the weed." (App. B at 192).  The state's witnesses testified that they were inside the dwelling at the time Petitioner entered. *Id.* at 100, 114.  Furthermore, Petitioner admitted that he caused the "banging" on the door heard on the 911 call made by a resident of the home he entered. *Id.* at 197.

[7]A person who commits burglary is guilty of a second degree felony under Florida Statute § 810.02(3)(b) if, "in the course of committing the offense, the offender does not make an assault or battery and is not and does not become armed with a dangerous weapon or explosive, and the offender enters or remains in a dwelling, and **there is not another person in the dwelling at the time the offender enters or remains**." (emphasis added).

13

habeas relief is granted as to Claim One pursuant to 28 U.S.C. §§ 2254(d)(1) and (2).

    **b.**    ***Claim Two***

Petitioner claims that trial counsel was ineffective for failing to timely file a motion to interview a juror and for omitting critical issues when drafting and arguing the motion (Doc. 1 at 7). Specifically, Petitioner argues that the motion was untimely under Florida Rule of Criminal Procedure 3.575 because a motion to interview a juror must be made within ten days of the verdict, and counsel did not file the motion until thirteen days after the verdict (Doc. 1-1 at 4-5). Petitioner also argues that the motion was "boilerplate" in that it did not specifically allege that the trial court's negative answer to the jury's question regarding whether any Florida statute addressed both assault and trespass unfairly influenced the jury's verdict. *Id.* at 5.

Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief, and the trial court denied the claim, noting that counsel *had* filed a motion to interview a juror and the motion had been denied (App. N at 2). The trial court also determined that any argument that the motion was improperly denied should have been raised on direct appeal. *Id.* Petitioner fails to show that the state court unreasonably applied *Strickland* in rejecting this claim of ineffective assistance of counsel.

First, Petitioner's argument that the motion to interview jurors, filed by counsel on May 4, 2010, was denied as untimely is speculative. There is no evidence that the motion was denied because it was not filed within ten days of the April 21, 2010 verdict.[8] *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (recognizing that vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim). The court minutes are silent as to why the motion was denied, although both counsel and the state were allowed to present arguments at a hearing held on the

---

[8] A trial court has discretion to accept an untimely motion to interview jurors if good cause is shown. *See* Fla. R. Cr. P. 3.575 (2010).

14

motion (App. A at 170).

Next, Petitioner's allegation that the motion was "boilerplate" is not supported by the evidence. In support of his motion to interview juror, counsel attached to the motion a letter from  juror Gary Abriola ("Abriola") that was sent to the trial judge after trial and argued that "[a] review of the correspondence [from Abriola] raises serious concerns about the legality of the verdict."  (App. A at 123).  Abriola's letter indicated that the jury had reached a compromise verdict, and had believed that by doing so, Petitioner would receive no more than five years in prison.  All that is required under Rule 3.575 in a motion to interview a juror is a statement of reasons why the verdict may be subject to challenge. *Pozo v. State*, 963 So. 2d 831, 835 (Fla. 4th DCA 2007).  The letter and motion conformed with Rule 3.575 in this respect.

Finally, even if counsel's motion to interview was deficient, a finding not made by this Court, Petitioner has not demonstrated that he was prejudiced by such deficiency.  Under Florida law, juror interviews are not permitted relative to matters that inhere in the verdict itself or relate to the jury's deliberation. *Reaves v. State*, 826 So. 2d 932, 943 (Fla. 2002).  Rather, jury inquiry is limited to allegations which involve an overt prejudicial act or external influence. *Id.* Petitioner has not shown, and the record does not suggest, that influences external to the evidence presented during the trial influenced the verdict.  Rather, Abriola's letter discussed the jury's reasoning behind finding Petitioner guilty of the lesser included offense of burglary and expressed disappointment in the sentence  faced by Petitioner (App. A at 119).  In other words, the letter discussed the jury's deliberation and matters inherent in the verdict itself;  matters that are not subject to juror interview.  Accordingly, the motion to interview would not have been granted even if the motion had been more precise as to the reasons the interview was sought. Because Petitioner cannot show prejudice from counsel's alleged failures,

Claim Two is denied. *See Strickland*, 466 U.S. at 687-688 (a petitioner must show both deficient performance and resulting prejudice to establish an ineffective assistance of counsel claim).

### c.    Claim Three

Petitioner alleges that counsel was ineffective for failing to request an independent act jury instruction and for not pursuing a defense based on the independent act of an unknown accomplice (Doc. 1 at 8; Doc. 1-1 at 10). Petitioner appears to argue that he was entitled to the instruction because he was at the residence to pick up a pound of marijuana from one of the victims, not to burglarize the residence (Doc. 1-1 at 10). Petitioner raised this issue in his Rule 3.850 motion for post-conviction relief, and the trial court denied the claim because Petitioner's plan to buy marijuana was unrelated to the subsequent burglary for which he was convicted (App. N at 3). Petitioner fails to show that the state court unreasonably applied *Strickland* in rejecting this claim of ineffective assistance of counsel.

Petitioner argues that he was at the victim's residence to pick up a pound of marijuana from Antonio Jones, one of the occupants of the home he was convicted of burglarizing. He testified that he had given Jones five hundred dollars earlier in the day as payment for the drugs (App. B at 189-190). Petitioner asserts that his agreement with Jones to buy drugs was sufficient to support an independent act instruction (Doc. 11 at 8). Petitioner appears to misunderstand Florida's independent act doctrine. Under Florida law, the independent act doctrine triggers a special jury instruction when evidence is presented that a defendant who previously participated in a common plan with co-felons, did not participate in the co-felons' acts that were alien to the original collaboration. "Under these limited circumstances, a defendant whose co-felon exceeds the scope of the original plan is exonerated from any punishment imposed as a result of the independent act." *Ray v. State*, 755 So.2d 604, 609 (Fla. 2000).

16

To the extent that Petitioner argues he was entitled to the independent act instruction merely because there was some evidence that he committed a separate unlawful act, he is reading too much into the jury instruction.  Petitioner does not allege, and the evidence does not support, that Jones, the alleged co-felon in Petitioner's purchase of marijuana, "exceeded the scope of the plan" by committing the burglary.  Rather, Jones testified that he barricaded himself in a bedroom after Petitioner entered the house and waited for the police to arrive (App. B at 100).

Petitioner's argument that some unknown person may have committed the burglary is also unavailing.  Petitioner testified that he went to the burglarized residence alone and that an unidentified man in a white t-shirt, who was already there, may have stolen the victim's stereo (App. B at 195, 198).  Petitioner testified that he had never seen the man before and did not enter into a conversation with him.  *Id.* at 192.  An independent act instruction based on the actions of the unknown man in the white t-shirt would not have been appropriate.  *See Williams v. State*, 34 So. 3d 768, 772 (Fla. 2d DCA 2010) ("We interpret the independent act instruction to require some evidence of a common design or common unlawful act.").

There was no evidence to warrant the giving of an independent act instruction in this case.  Because Petitioner was not entitled to the jury instruction in question, counsel cannot be deemed ineffective for failing to request it.  Claim Three is denied.

### d.    *Claim Four*

Petitioner claims that counsel was ineffective for advising him to waive a jury trial and plead to the mercy of the court on count two (Doc. 11 at 9).  Petitioner  alleges that counsel advised him that he would receive a sentence of four to twelve years if he pleaded guilty and that the court would not give him a harsher sentence because there were no aggravating factors other than the fact that he

17

(Petitioner) was a habitual felony offender (Doc. 1 at 10).   Petitioner contends that this "mis-advice" rendered his plea involuntary. *Id.* at 9.   Petitioner raised this issue in his Rule 3.850 motion, and the trial court denied the claim because Petitioner had denied in open court that any sentencing promises had been made (App. N at 4).   Petitioner fails to show that the state court unreasonably applied *Strickland* in rejecting this claim of ineffective assistance of counsel.

Petitioner's plea colloquy in this case refutes his claims.   At the beginning of the plea proceeding, trial counsel moved the court on Petitioner's behalf to withdraw his previously entered plea of not guilty and to tender a plea of guilty to the charge of possession of ammunition by a convicted felon (App. C at 4).   Petitioner was queried as to whether he wanted to enter the plea "with there being no guarantees at all regarding sentencing on that count[.]" *Id.* at 4-5.   Petitioner affirmed that he did. *Id.* at 5.   Petitioner argues this "boilerplate" advisement was not inconsistent with his belief that his sentence would be from four to twelve years (Doc. 11 at 10).   However, the court further queried:

> THE COURT:      Do you understand that the maximum penalty that the Court can impose for that offense since the State is seeking enhanced penalties as a habitual felony offender would be ordinarily fifteen years which doubles to thirty years if you are sentenced as a habitual felony offender, do you understand that?
>
> [PETITIONER]:      Yes, ma'am.

(App. C at 6).   It is clear that the court advised Petitioner that he faced a maximum sentence of fifteen to thirty years in prison on count two, not the four to twelve years alleged by Petitioner.   Furthermore, the plea agreement signed by Petitioner indicated that he faced a maximum of thirty years as a habitual felony offender and that there was no agreement on sentencing (App. A at 242).   Petitioner told the court that he had completely read the plea form (App. C at 8).   Petitioner further told the court that he had not been promised anything or pressured, threatened, or coerced to enter the plea.   The court

18

determined that the plea was "freely and voluntarily made with knowledge of the consequences after having advice of competent counsel[.]" *Id.* at 7, 11.

Petitioner's own representations to the trial court during his plea colloquy constitute "a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991) ("If a defendant understands the charges against him, understands the consequences of a guilty plea and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review."). Petitioner demonstrated during the change of plea hearing that he understood the possible sentence he faced. Furthermore, the imposition of a sentence greater than that expected by Petitioner, or predicted by counsel, is not an adequate ground for setting aside a conviction. See *United States v. Pallotta*, 433 F.2d 594, 595 (1st Cir. 1970) (finding that a "[m]ere prediction by counsel of the court's likely attitude on sentence, short of some implication of an agreement or understanding, is not ground for attacking a plea.") (*quoting Domenica v. United States*, 292 F.2d 483, 485 (1st Cir. 1961)). Moreover, trial counsel's failure to accurately predict the sentence which the trial court will impose is not deficient performance. As the Eleventh Circuit has reiterated, effective assistance of counsel does not mean errorless assistance. *Green v. Zant*, 738 F.2d 1529, 1536 (11th Cir. 1984). Petitioner has not shown any reason why this Court should disregard his sworn statements, and he has not established that counsel was ineffective for advising him to plead guilty. Claim Four is denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

**IV.    Certificate of Appealability**

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Secretary Department of Corrections*, 568 F.3d 929, 934 (11th Cir. 2009).  However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Petitioner has failed to make a substantial showing of the denial of a constitutional right.   Thus, the Court will deny Petitioner a certificate of appealability.

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1.   The Petition for Writ of Habeas Corpus filed by Cedric S. Barriner (Doc. 1) is **GRANTED in part and DENIED in part**.

2.   Habeas relief is **DENIED with prejudice** with regard to Claims Two, Three, and Four.

3.   With regard to Claim One, Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is conditionally **GRANTED**. The writ will issue ninety days after the filing of this Order unless, within such ninety day period, State officials initiate new trial proceedings in state court.

4.   As to Claims Two through Four, Petitioner is **DENIED** a Certificate of Appealability.

5.   The Clerk of the Court shall enter judgment accordingly and close this case.

**DONE AND ORDERED** in Orlando, Florida, this 29th day of July, 2013.

Charlene Edwards Honeywell
United States District Judge

Copies to:
OrlP-1 7/29
Counsel of Record
Cedrick S. Barriner

21